IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRUCE L. WISHNEFSKY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-128J |
| | ) | |
| v. | ) | Judge Kim R. Gibson |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| JAWAD A. SALAMEH, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

## I.  RECOMMENDATION

For the reasons stated below, it is respectfully recommended that Defendant's Motion to

Dismiss (Doc. No. 23) be denied with respect to Plaintiff's Eighth Amendment claim arising

from the alleged delay of Plaintiff's medical treatment between May 17, 2007, to May 22, 2007.

It is further recommended that Defendant's Motion to Dismiss be granted with respect to all

other claims of  the Eighth Amendment violations alleged in Plaintiff's Complaint, as amended

(Doc. No. 22).  It is further recommended that supplemental jurisdiction not be exercised with

respect to Plaintiff's State law medical battery, and that it subsequently be dismissed for lack of

jurisdiction.

## II.  REPORT

Plaintiff Bruce L. Wishnefsky ("Plaintiff"), an inmate currently housed at the State

Correctional Institution at Laurel Highlands, Pennsylvania ("SCI-Laurel Highlands"), brings this

civil action *pro se* pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983.  Named as

defendant is the medical director of SCI-Laurel Highlands, Jawad A. Salameh, M.D.,

("Defendant").  A summary of the facts that are relevant to this motion, as recited by Plaintiff, is

as follows.

Plaintiff is normally housed in the personal care unit of SCI-Laurel Highlands, and

suffers from several medical conditions, including Parkinson's Disease, Osteoarthritis of his

lower spine, and Benign Prostatic Hyperplasia ("BPH").  Doc. No. 22 at ¶ 7.  Plaintiff's BPH

interferes with his ability to urinate; in order to treat this condition, Plaintiff was prescribed the

drug Hytrin in July of 2006.  Id.  Hytrin was chosen because another drug, Minipress, was

inadequate.  Id.

On  May 12, 2007, Plaintiff, exhibiting symptoms of dizziness and low blood-pressure,

was admitted to the long term care unit at SCI-Laurel Highlands.  Id. at ¶ 18.  Plaintiff

characterizes the long term care unit as "a skilled nursing facility," which is not equipped to treat

acutely ill patients.  Id. at 5.   Plaintiff's previously prescribed Hytrin was discontinued,

presumably by medical personnel, in order to raise his blood pressure.  Id. at ¶ 18.  By May 14,

2007, Plaintiff's standing blood pressure had fallen to 58/50.  Id. at  ¶ 19.  Plaintiff relates that

John Robinson, M.D., hypothesized that Plaintiff was suffering from a G.I. bleed.  However,

Plaintiff alleges that Dr. Robinson lacked the authority to admit him to Somerset Hospital for

treatment.  Id.  Over the next few days, on May 16 and 17, 2007, Plaintiff became disoriented,

confused, and "had slurred speech [and] loose associations".  Id.  Dr. Robinson referred Plaintiff

to Dr. Karmudi, a psychiatrist, who opined that Plaintiff suffered from encephalopathy as a

secondary medical condition  Id.

Dr. Robinson ordered a Complete Blood Count (CBC) test for Plaintiff on May 17, 2007.

However, blood was not drawn for this test until May 22, 2007.  Id. at ¶ 20.  Plaintiff alleges that this five-day delay was the result of Defendant's policy of not having a phlebotomist available each day.  Id. at ¶ 20.1.  Plaintiff was also examined by Defendant on May 22, 2007, who ordered that Plaintiff undergo further observation at the long term care unit.  Id. at ¶ 21.  Plaintiff requested that Hytrin be reinstated, but Defendant refused to reorder that particular treatment. Id.

Plaintiff alleges that when his blood was drawn on May 22, 2007, for the CBC ordered by Dr. Robinson five days before, the initial sample was clotted.  Paul Noel, M.D., the Statewide medical director for Defendant's employer, Prison Health Services, ordered that a second sample be taken.  Defendant authorized blood to be drawn from Plaintiff's foot, as the quantity of blood in Plaintiff's body was allegedly so low that it could not be drawn from his arm.  This second sample indicated Plaintiff's hemoglobin level was only 4.4, which Plaintiff avers is an indication of severe blood loss.  Id. at ¶ 22.  Defendant "immediately" admitted Plaintiff to Somerset Hospital.  Id. at ¶ 23.  At the hospital, Plaintiff was given five units of blood through transfusion, after which his blood pressure returned to normal.  Id.  Plaintiff avers that he was suffering from a gastric ulcer, which had him to lose so much blood.  Id.

While at Somerset Hospital, Plaintiff experienced problems urinating.  As a result, Plaintiff avers that his bladder was extremely distended,  possibly causing damage to his kidneys.  Id. at  ¶ 24  In response to this condition, Defendant recommended that Plaintiff receive a Foley catheter.  Id.  Plaintiff initially refused the catheter, asking instead to be administered the drugs Hytrin or Minipress.  Id.  In the end, however, a Foley catheter was administered to Plaintiff, and Defendant requested a urology consultation, which could not be completed at the

time because no urologist was available.  Id. at ¶ 25.  Plaintiff avers that the catheter was to be in place for no more than ten days, but was not timely removed.  Id.  Defendant discharged Plaintiff from Somerset Hospital on May 24, 2007.  Id.

On June 4, 2007, Defendant ordered a urology consultation for Plaintiff, stating that Plaintiff could not void his bladder without a catheter.  Plaintiff avers that this assessment by Defendant was incorrect, as Plaintiff was capable of voiding without a catheter when using Hytrin.  Id. at ¶ 26.  This appointment was delayed until July 19, 2007.  Id. at ¶ 32.  In the interim, on June 14, 2007, Plaintiff spoke to Dr. Robinson and asked that he remove the catheter and reinstate Hytrin.  Id. at ¶ 30.  However, Plaintiff avers that Dr. Robinson stated that only Defendant could make that decision.  Id.  On the suggestion of psychiatrist Dr. Karmudi, Plaintiff wrote a letter on June 18, 2007 to Defendant "insisting that Hytrin be restarted and that the Foley [c]atheter [be] removed."  Id. at ¶ 31.  The following day, June 19, 2007, Plaintiff filed an administrative grievance, requesting the removal of the Foley catheter and reinstatement of Hytrin.  Id.  That very day Dr. Robinson removed the catheter and reinstated Hytrin.  Id.  Also on June 19, 2007, a urine sample taken from Plaintiff indicated that he had developed a urinary tract infection.  Id. at ¶ 32.  This infection resulted in Plaintiff developing a fever, exhibiting tremors so severe that they impeded Plaintiff's ability to feed himself or write, and made him incontinent for more than a month.  Id.  On July 19, 2007, the date of  the urology examination ordered by Defendant, Plaintiff's urinary problems had resolved.  Id.

A.  Standard of Review

The Supreme Court of the United States has held that, when determining whether a

-4-

plaintiff has properly stated a claim upon which relief can be granted, a court must dismiss a complaint that does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This is not to say that the Supreme Court requires "heightened fact pleading of specifics . . ." Id. at 570.  However, the "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.  The Court has made it clear that the requirement that pleadings must be facially plausible, as expressed in Twombly, applies to all civil suits in the federal courts. See Ashcroft v. Iqbal, 129 S.Ct. 1937 (May 18, 2009).

A court must accept as true all allegations of the complaint, and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. See Angelastro v. Prudential-Bache Sec. Inc., 764 F.2d 939, 944 (3d Cir. 1985).  However, a court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004).  Nor must a court accept legal conclusions set forth as factual allegations. See Twombly, 550 U.S. at 555.  Furthermore, it is improper for a court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  A plaintiff's claims must support a cause of action as a matter of law: claims that do not must be dismissed under Rule 12(b)(6). Cf. Neitzke, 490 U.S. at 326-27.

The United States Court of Appeals for the Third Circuit has recently held that, when determining whether to dismiss a complaint for failing to state a claim upon which relief can be

granted, a district court should apply a two-part test in order to determine whether a pleading's recitation of facts is sufficient.  See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).  "First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Id. at 210-11 (citing Iqbal, 129 S.Ct. at 1949).  "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  Fowler, 578 F.3d at 211 (quoting Iqbal, 129 S.Ct. at 1950).

Additionally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).  In a section 1983 action, the court must liberally construe a *pro se* litigant's pleadings and 'apply applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.'  Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d. Cir. 1999)).  "Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution."  Higgins, 293 F.3d at 688 (quoting Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)).

Finally, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).  This was originally a reaction to the rule requiring heightened factual pleading in civil rights cases.  See id. (citing Darr v. Wolfe,

767 F.2d 79, 80-81 (3d Cir. 1985) (requiring district court to exercise its discretion to allow *pro se* plaintiffs to amend their claims to avoid dismissal)); see also Dist. Council 47 v. Bradley, 795 F.2d 310, 316 (3d Cir. 1986) (extending the *pro se* amendment rule to counseled complaints). This rule remains, and has been periodically affirmed, even after the Supreme Court's 1993 decision in Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993), which abrogated the heightened pleading rule in civil rights cases.  See Fletcher-Harlee Corp., 482 F.3d at 252 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).

B.  Analysis

Plaintiff filed his initial complaint with this Court on June 3, 2008.  See Doc. No. 1.  A second amended complaint was filed on April 23, 2009. See Doc. No. 22.  In his second amended complaint, Plaintiff alleges that Defendant's actions constituted cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States, which is actionable under 42 U.S.C. § 1983.  Doc. No. 22.  at ¶¶ 46-56.  Additionally, Plaintiff claims that Defendant's actions with respect to the prolonged use of the Foley Catheter constituted a medical battery, in violation of the laws of the Commonwealth of Pennsylvania.  Id. at ¶¶ 57-61. This Court will address these claims *seriatim*.

1. Civil Rights Claim

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements: 1) the alleged misconduct must have been committed by a person acting under

color of state law; and 2) the defendants' conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).  In this case, there appears to be no controversy regarding Defendant's status as a "person acting under the color of state law."  As such, this Court turns its analysis to whether Plaintiff properly pleads sufficient factual allegations to support the conclusion that Defendant's actions violated his rights under federal law.

The deprivation of medical treatment rises to the level of a deprivation of a prisoner's Eighth Amendment right not to be subjected to cruel and unusual punishment in situations where it constitutes the "unnecessary and wanton infliction of pain," or where there is a "deliberate indifference to a serious medical need[.]"  Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (internal quotation marks and citations omitted).  Allegations of medical malpractice, or mere disagreement as to the proper course of medical treatment, are not sufficient to establish a Constitutional violation.  Id.

In a situation in which a prisoner alleges deliberate indifference to a medical need, the United States Court of Appeals for the Third Circuit has held that a plaintiff must plead "(I) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).  With respect to the first requirement, a medical need is serious "if it has been diagnosed by a physician as requiring treatment."[1]  Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003).

---

[1]It is important to note that this standard does not require that a condition be diagnosed by a physician as requiring treatment prior to the commission of a violation of the Eighth

(continued...)

A medical need may also be "serious" if even a layperson would recognize the need for a doctor's attention.  Morrison v. Phillips, No. 06-812, 2008 U.S. Dist. LEXIS 71205, at *39 (D. N.J. Sept. 16, 2008) (citing Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006)).

With respect to the second prong, deliberate indifference is properly pleaded by factual allegations supporting the conclusion that the official knew of and disregarded an excessive risk to inmate health or safety.  Natale, 318 F.3d at 582 (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  The official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists."  Natale, 318 F.3d at 582.  The official must also "draw the inference."  Id.  The United Sates Court of Appeals for the Third Circuit has held that this standard is met in several scenarios, including "when a doctor is intentionally inflicting pain on [a] prisoner," and when the denial of "reasonable requests for medical treatment . . . exposes the inmate to undue suffering[.]" Spruill, 372 F.3d at 235 (internal quotation marks and citations omitted).  This standard is also met when "a prison official . . . knows of a prisoner's need for medical treatment but intentionally refuses to provide it" or "delays necessary medical treatment based on a nonmedical reason."  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

In the instant case, Plaintiff alleges that Defendant violated his rights under the Eighth Amendment in two separate instances.  The first involves the delay of treatment of Plaintiff's low blood pressure, encephalopathy, and dangerously low quantity of blood in May of 2007.  Doc. No. 22, at  ¶¶ 18-23; 46-50.  The second involves the prolonged use of a Foley catheter when other treatments allegedly were available and better.  Id. at ¶¶ 51-56.

---

[1](...continued)
Amendment.  See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).

i. <u>Delay of Treatment from May 17, 2007, to May 22, 2007</u>

With respect to the first claim arising from the Eighth Amendment, Plaintiff has properly pleaded that he suffered from a serious medical condition.  Plaintiff alleges that he exhibited symptoms that caused enough concern amongst the medical staff of SCI-Laurel Highlands that he was transferred to the long term care Unit for treatment.  Tests were ordered by physicians to determine the cause of Plaintiff's symptoms, and ultimately, he was admitted to Somerset Hospital with a dangerously low amount of blood.  Given that physicians allegedly diagnosed Plaintiff with a condition requiring treatment, the first prong of the test under <u>Natale</u> has been met.  318 F.3d at 582

With respect to the second prong of the test, it appears that Plaintiff did receive at least some treatment during the time period in question.  First, his pleadings indicate that someone suspended the use of Hytrin in order to stabilize his blood pressure, and they also explicitly state that he was examined by Drs. Robinson and Karmudi prior to Dr. Robinson's order for a blood test on May 17, 2007.  Doc. No. 22 at ¶¶ 19.  Furthermore, Plaintiff indicates that, Defendant and his superior, Dr. Noel, were both involved with Plaintiff's treatment on May 22, 2007, and that once the results of Plaintiff's blood test became available, Defendant immediately admitted Plaintiff to Somerset Hospital.  <u>Id.</u> at ¶¶ 21-23.  An allegation of deliberate indifference, by its very nature, precludes those periods of time where Plaintiff did receive medical care.  As such, in order to determine whether Plaintiff has adequately pleaded a claim of deliberate indifference, this Court must examine the periods of time during which medical attention was allegedly withheld.   Thus, the issue germane to the adjudication of this motion is whether the facts alleged by Plaintiff are sufficient to support the conclusion that the five-day delay of Plaintiff's blood

test from May 17, 2007, to May 22, 2007, which in turn allegedly delayed Plaintiff's admission to Somerset Hospital, constituted deliberate indifference to Plaintiff's severe medical condition on the part of Defendant.

It is well established that "'[an individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing[.]'" Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2004) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Consequently, in order to plead properly that Defendant is liable for a violation of Plaintiff's rights under the Eighth Amendment, Plaintiff must allege facts that, if proven true, would support the conclusion that Defendant was responsible for some culpable act or omission, and not just the promulgation of an abstract policy. In order to determine whether Defendant's alleged policies of not keeping a phlebotomist on staff every day, and not admitting patients suffering of acute medical conditions to a facility equipped to treat them, it is proper to use the supervisory liability test promulgated by the United States Court of Appeals for the Third Circuit in Beers-Capitol v. Whetzel. 256 F.3d 120 (3d Cir. 2001).[2] This test is as follows: "the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was

---

[2]The Court of Appeals stated specifically that liability may attach both in cases where a supervisor is alleged to be liable for the Eighth Amendment violations committed by a subordinate, and where a supervisor is alleged to be directly liable for the implementation of deficient policies. Beers-Capitol v Whetzel, 256 F.3d 120, 133-134. In the issue *sub judice*, while Plaintiff does state explicitly that he is alleging both direct and supervisory liability against Defendant, Plaintiff makes no allegations that a subordinate of Defendant had violated Plaintiffs rights under the Eighth Amendment. As such, this Court's analysis of Plaintiff's claims are limited only to Defendant's direct liability for his alleged deficient policies.

-11-

indifferent to that risk; and (4) the injury resulted from the policy or practice." Id. at 134.

Furthermore, the Court of Appeals in this case recognized that one way in which a plaintiff could show supervisory liability "is by showing that the supervisory official failed to respond appropriately in the face of an awareness of a pattern of such injuries." Id. (internal quotation marks and citations omitted). Additionally, that court recognized that in some situations, "the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of an unreasonable risk, of knowledge of that unreasonable risk, and of indifference to it." Id. (internal quotation marks and citations omitted). However, it is important to note that goal of this test is to identify indicia of subjective knowledge of the risk posed to an inmates health and safety, not to determine the objective reasonableness of the policy itself; indeed, "the official must *actually* be aware of the existence of the excessive risk; it is not sufficient that the official *should* have been aware." Id. at 133 (emphases added).

Applying this standard to the issue *sub judice*, it appears to this Court that Plaintiff's factual allegations regarding the delay of his blood test and subsequent admission to Somerset Hospital between May 17, 2007, and May 22, 2007, if proven true, could support the conclusion that Defendant's alleged policies constituted deliberate indifference. The first and fourth prongs are easily met by the symptoms that Plaintiff allegedly suffered with respect to his loss of blood. The second and third prongs are met by the very nature of the alleged policies themselves. Specifically, the alleged policies of not directly admitting acutely ill patients to a facility equipped to deal with them, in addition to  not maintaining the personnel necessary to complete needed medical tests in a timely manner (especially when the results of these tests, under the

-12-

facts alleged by Plaintiff, apparently determine whether a transfer to an acute care facility would be granted), if in existence, would create a risk of constitutionally cognizable harm sufficiently egregious for a reasonable trier of fact to conclude that Defendant must have been aware of it, but was deliberately indifferent.  Under the standard that must be applied when determining the adequacy of Plaintiff's pleadings, Plaintiff has met his burden under Rule 8 of the Federal Rules of Civil Procedure with respect to the narrow set of facts relating to the delay of testing and treatment of his acute symptoms from May 17, 2007, to May 22, 2007. That is not to say that his claims will survive the test of a Rule 56 motion. However, at this stage of the pleadings, taking all well pleaded facts as true, Plaintiff states a claim.

Defendant moves that Plaintiff's demand for punitive damages be dismissed.  Doc. No. 24 at 10. For awarding punitive damages in a section 1983 case is when the trier of fact finds "reckless, callous, intentional or malicious conduct."  Springer v. Henry, 435 F.3d 268, 281 (3d Cir. 2006).  This standard has been held to be disjunctive, meaning that punitive damages could be granted in a case where a trier of fact found activity that is reckless, *or* callous, *or* intentional, *or* malicious.  Id.  Given the extremely high standard for showing a policy constitutes deliberate indifference to a medical need, it seems to be a matter of basic logic that a trier of fact finding that this burden had been met could not be precluded, as a matter of law, from finding that the standard for punitive damages had been met as well.  As such, Defendant's argument that Plaintiff's claim for punitive damages should be dismissed, with respect to this individual claim, should be rejected.

ii. Prolonged Use of Foley Catheter from May 24, 2007, to June 19, 2007

The second instance in which Plaintiff alleges that Defendant violated his rights under the Eighth Amendment involves Defendant's prescription of a Foley catheter in lieu of Hytrin, and the extended, 26-day period of time during which it was administered, which allegedly led to Plaintiff's contraction of a urinary tract infection.  Doc. No 22, at ¶¶ 51 - 56.  As under the previous set of facts alleged by Plaintiff to constitute a violation of his rights under the Eighth Amendment, it appears that Plaintiff suffered from a serious medical condition.  This is true both with respect to Plaintiff's allegedly distended bladder,  and his subsequent urinary tract infection, which resulted in "fever . . . severe shaking" and the alleged contraction of urosepsis."  Id. at ¶ 56.

However, Plaintiff's allegations with respect to the use of the catheter do not rise to the level of deliberate indifference to his severe medical conditions.  It is clear from Plaintiff's complaint, as amended, that the original use of the catheter was as a treatment for Plaintiff's distended bladder.  Id. at ¶ 24.  Furthermore, Plaintiff's factual allegations do not support the conclusion that Defendant failed to administer reasonable treatment, or delayed treatment for a nonmedical reason.  To the contrary, Plaintiff's allegations indicate that he was not left without medical care during the period of time that the Foley catheter was being used.  Plaintiff alleges that Defendant sought a urology consultation around the time that the catheter was initially administered, on or about May 24, 2007, but that none was available.  Id. at ¶¶ 24-25.  Furthermore Plaintiff alleges that Defendant sought another consultation for him on June 4, 2007, and that said consultation was rescheduled by the urologist, not the Defendant, on June 13, 2007.  Id. at ¶ 29.  Plaintiff also indicates that he received medical treatment by Dr. Robinson and Dr. Karmudi on June 14, 2007, and June 17, 2007, respectively, and that the catheter was

-14-

removed on the very same day that he was diagnosed with having contracted a urinary tract infection - June 19, 2007.[3]  Id. at ¶¶ 31-32.

In short, despite Defendant's alleged unwillingness to examine or communicate with Plaintiff while the catheter was inserted, the allegations made in the complaint fail to indicate that Plaintiff was denied adequate medical care during that period of time.  Additionally, despite Plaintiff's obvious and understandable distaste for the device, and preference for the use of Hytrin to regulate his urinary functions, his disagreement with Defendant over the method and type of treatment of his serious medical condition is not enough to rise to the level of a violation of the Eighth Amendment's prohibition of cruel and unusual punishment.


### 2. Medical Battery Claim

Plaintiff also claims that Defendant's extended application of a Foley catheter, from about May 24, 2007, to June 19, 2007, constituted a medical battery under the laws of the Commonwealth of Pennsylvania.  Doc. No. 22 at ¶¶ 24-31, 61.  Plaintiff admits that he originally consented to the use of the catheter, but only for a ten-day period of time.  Id. at ¶ 58.  Defendant argues that Plaintiff's allegations are tantamount to a claim of lack of informed consent, which "require expert testimony and are considered professional liability claims."  Doc. No. 24 at 8-9.  As such, Defendant argues, Plaintiff must file a certificate of merit under Rule 1042.3 of the Pennsylvania Rules of Civil Procedure, which he failed to do within the applicable 60-day window after the filing of the original complaint.  Id. at 9.  Consequently, Defendant moves that

---

[3]This Court does take notice that this was also the same day that Plaintiff filed an administrative grievance regarding the catheter.  Doc. No. 22 at ¶ 31

this claim be dismissed for failure to prosecute.  Id.

Jurisdiction for this State law claim is predicated under the principle of supplemental jurisdiction pursuant to 28U.S.C. § 1337.  Under that statute, it is proper for a court, possessing original jurisdiction over related claims, also to exercise jurisdiction over "other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1337(a). However, under circumstances where a court has dismissed all claims that giving it original jurisdiction, the court may choose to decline supplemental jurisdiction over the remaining claims as well.  28 U.S.C. § 1337(c)(3).

In the issue *sub judice*, this Court has recommended the dismissal of all federal question claims related to the extended application of the Foley catheter to Plaintiff.  The only remaining claim over which this Court possesses original jurisdiction - the Eighth Amendment claim related to Defendant's alleged delay of treatment of Plaintiff's serious medical needs from May 17, 2007 to May 22, 2007 - is factually and temporally distinct from the alleged prolonged use of the Foley catheter that is the basis for Plaintiff's State law medical battery claim.  Without any real nexus between the remaining claim, over which this Court would have original jurisdiction, and Plaintiff's State law claim, exercise of supplemental jurisdiction would be improper.  As such, this Court recommends that supplemental jurisdiction not be exercised over Plaintiff's State law claim, pursuant to 28 U.S.C. § 1337(c)(3), and the claim be dismissed for lack of subject matter jurisdiction.


III.     **CONCLUSION**

For the reasons stated above it is respectfully recommended that Defendant's Motion to Dismiss be denied with respect to Plaintiff's Eighth Amendment claim arising from the alleged delay of Plaintiff's medical treatment between May 17, 2007, to May 22, 2007.  It is further recommended that Defendant's Motion to Dismiss be granted with respect to all other claims of the Eighth Amendment violations alleged in Plaintiff's Complaint, as amended.  It is further recommended that supplemental jurisdiction not be exercised with respect to Plaintiff's State law medical battery, and that it subsequently be dismissed for lack of jurisdiction.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

Dated:  December 21, 2009                   By the Court:


                                            LISA PUPO LENIHAN
                                            United States Magistrate Judge


cc:     Bruce L. Wishnefsky
        DQ-4829
        SCI-Laurel Highlands
        5706 Glades Pike
        Somerset, PA 15501

        Counsel of record